IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-00306-MSK-NRN

**CHARLES BARSON,**

    Plaintiff,

v.

**C.A.M. SOLAR, INC., and
BRIAN CULLEN,**

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Brian Cullen's Motion to Dismiss **(# 35)**, Mr. Barson's response **(# 40)**, and Mr. Cullen's reply **(# 47)**; Mr. Cullen's Motion for Summary Judgment **(# 43)**, Mr. Barson's response **(# 53)**, and Mr. Cullen's reply **(#62)**; Mr. Barson's Motion to Strike **(# 58)** the Defendants' Amended Answer **(# 28)**, and the Defendants' response **(# 68)**; and certain collateral motions that will be addressed herein.

## FACTS

The Court provides a summary of the pertinent facts herein and elaborates as necessary in its analysis.

On January 15, 2018, Mr. Barson commenced this action in the Colorado District Court for the County of Denver. The Complaint in that action, which remains the operative pleading herein, alleges that as of April 2017, Mr. Barson was the owner of a company called E Squared Solar, LLC ("E Squared"). On April 19, 2017, Mr. Barson agreed to sell E Squared's physical assets and business rights to Defendant C.A.M. Solar, Inc. ("CAM"). The terms of the

1

agreement called for Mr. Barson to receive a portion of CAM's profits, as well as an equity interest in CAM based on its sales over a given period of time. Mr. Barson joined CAM as part of its sales team.

On July 28, 2017, CAM terminated Mr. Barson's employment. Mr. Barson alleges that CAM breached its contract with him by failing to pay his salary, profits owed under the sales agreement, and commissions, as well as to tender the equity stake called for by the sales agreement. Mr. Barson also asserts a claim for civil theft, presumably under Colorado law, against Mr. Cullen, CAM's President, relating to the CAM equity and profits that CAM has refused to pay to Mr. Barson. Finally, Mr. Barson asserts a claim for a declaratory judgment regarding his entitlement to CAM equity and assets.

Now pending before the Court are several motions, described in detail below.

## ANALYSIS

### A. Motion to Strike Amended Answer

On December 20, 2018, the Defendants moved (**# 38**) for leave to file an Amended Answer. Consistent with D.C. Colo. L. Civ. R. 15.1(b), the motion contained a redline version of the Defendants' proposed amendments. The Court granted (**# 46**) that motion, and the Defendants then filed their Amended Answer (**# 48**). The Amended Answer's text differs in certain respects from that found in the redline version attached to the Defendants' motion to amend. Mr. Barson has moved (**# 58**) to strike the Amended Answer, and the Defendants have responded that the textual changes are merely stylistic, not substantive.

The purpose of Local Rule 15.1(b) is to ensure that all parties are aware of the amended pleading that is being contemplated and that any rulings the Court makes with regard to such pleadings are neither evaded nor rendered advisory by subsequent modifications to the proposed

language.  Accordingly, the Court does not permit amended pleadings as filed to differ from those proposed and approved under Local Rule 15.1(b) unless such modifications are ordered by the Court.

In litigation that is already contentious and shows few signs of relenting, the Court will not waste time addressing issues that reflect lack substantive or procedural significance.  It is not necessary to definitively determine whether the modifications made by the Defendants to their proposed amended answer are substantive or stylistic.  Rather, the Court deems proposed pleading found at pages 40-52 of Docket #38 to replace the document filed at Docket #48.  In this respect, Mr. Barson's motion is granted in part and denied in part.

**B.  Mr. Cullen's motions**

Mr. Cullen has filed both a motion to dismiss **(# 35)** and motion for summary judgment **(# 43)** directed at Mr. Barson's civil theft claim..

Mr. Barson's civil theft claim is premised upon C.R.S. § 18-4-405.  This Colorado statute provides that "all property obtained by theft, robbery, or burglary shall be restored to the owner. . . . The owner may maintain an action . . . against the taker thereof.  In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover the costs of the action and reasonably attorney fees."  Because this civil right of action is found within Colorado's criminal code, the Court interprets the term "theft" to incorporate the elements that must be proven to establish the criminal offense of theft[1] (although it is not necessary that Mr. Cullen be criminally charged and convicted).  *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000).  In other words, Mr. Barson must

---

[1]   *Itin* suggests, without necessarily holding, that the criminal law's "beyond a reasonable doubt" standard would not apply in a civil theft claim, and that only the ordinary "preponderance of the evidence" standard would control.  17 P.3d at 136 n. 12.

ultimately plead and prove that Mr. Cullen: (i) knowingly obtained control over Mr. Barson's property without authorization, and (ii) did so with the specific intent to permanently deprive Mr. Barson of the benefit of the property. *Id.* at 134.

Mr. Cullen's motion raises several challenges to the civil theft claim against him: (i) that Mr. Barson has not alleged facts regarding Mr. Cullen's specific intent to deprive Mr. Barson of possession of the property; (ii) that Mr. Barson has not pled facts showing that he had a possessory interest in the funds and stock at the time Mr. Cullen withheld them; (iii) that Colorado's Economic Loss Rule prevents Mr. Barson from using the civil theft statute to recover losses arising out of a contract; (iv) that the Court cannot apply Colorado law to deem criminal an action taken by Mr. Cullen, a Texas resident, within the State of Texas; and (v) that Mr. Barson cannot show that the profits that CAM distributed were payable to him under the sales agreement.

The Court need not address all of Mr. Cullen's arguments because it finds merit in the second one: accepting the Complaint's allegations as true, it has no allegations, and Mr. Barson has not come forward with evidence that would establish that Mr. Cullen exercised control over property *owned* by Mr. Barson. Without sufficient allegations in the Complaint, this claim could be dismissed, but the Court would give Mr. Barson the opportunity to replead. The Motion for Summary Judgment acts in that capacity giving him the opportunity to come forward with evidence that would be sufficient to prove the required allegation. Thus, the Court considers Mr. Cullen's argument in the context of his request for summary judgment.

The record regarding this claim is somewhat fragmented and it has not been well-marshaled. Mr. Barson has not tendered an affidavit (or even a coherent factual argument) explaining the contours of his civil theft claim. The Complaint alleges that Mr. Barson "is

4

entitled to a share of all profits distributed to shareholders," that CAM "has distributed profits on one or more occasions," and that Mr. Cullen "exercised control over all amounts of profit . . . intending to permanently deprive Mr. Barson of the possession and use of his share of the profits." The Court infers from that final allegation that Mr. Barson was not included in any of the profit distributions that occurred.

The record reflects that the Asset Purchase Agreement, which is at issue in this case, promises that upon the closing of the sale of E Squared in April 2017, Mr. Barson would be entitled to 2.5% of "any profits made by [CAM]." The language of that provision goes on to make clear that Mr. Barson's entitlement to profits was forward-looking – that is, that "such profits shall be calculated starting on the date of Closing." Mr. Cullen has tendered his own affidavit that makes clear that, during the parties' negotiations over the Asset Purchase Agreement, CAM explained to Mr. Barson that CAM owed its shareholders some $1.29 million in unpaid profit distributions reflecting profits earned between 2016 and the April 19, 2017 closing date of the E Squared sale. Mr. Cullen's affidavit goes on to state that between the April 2017 closing date and October 2018, CAM made five profit distributions to its shareholders, all of which related to pre-April 2017 profits, to which Mr. Barson had no entitlement. Mr. Cullen states that no profit distributions have been made since October 2018. Mr. Barson has not tendered any evidence to refute this. Thus, the record reflects that although CAM has made several profit distributions since the E Squared sale, that such funds were not owned by Mr. Cullen but instead by CAM and that Mr. Barson had no ownership interest in them. At most he had a claim to be paid by CAM upon the satisfaction of a number of contingencies. CAM's distribution of proceeds from the E-Square sale cannot constitute "theft" by Mr. Cullen of Mr.

5

Barson's "property." Thus, Mr. Cullen is entitled to summary judgment on Mr. Barson's civil theft claim to the extent it turns on CAM's distribution of its profits.

Mr. Barson's articulation of the civil theft claim in the Complaint also makes vague references to his "equity" in CAM.[2] The Asset Purchase Agreement does refer to CAM allocating certain levels of "ownership" in CAM (subsequently defined as "rights to stock and voting," with a clause prohibiting dilution of Mr. Barson's ownership interests) based upon CAM meeting designated production targets. Satisfaction of these targets appear to be conditions precedent to transfer of equity interests in CAM to Mr. Barson. Notably, nothing in the Complaint nor anywhere else in the record alleges or establishes that the targets were met.

Assuming, without finding, that Mr. Barson had some equity interest in CAM separate from this provision, the Complaint alleges that Mr. Cullen exercised control over Mr. Barson's interest with the intent to deprive Mr. Barson of it. But the Complaint does not clearly define this interest (stock, option, indenture or otherwise); it does not state what action Mr. Cullen allegedly took with regard to such interest. And it does not state how that injured Mr. Barson. Nothing in his summary judgment response provides further clarification. As a consequence, the Court finds that the Complaint is deficient, and even if construed to properly enunciate a claim, Mr. Barson has come forward with no evidence to support it. Accordingly, Mr. Cullen is entitled to summary judgment on Mr. Barson's civil theft claim.

**C. Motion to Bifurcate Trial**

---

[2] Mr. Barson also claims a contractual entitlement to certain salary payments as well as commissions on CAM sales after April 2017, and the Court assumes that CAM has not made those payments either. Mr. Barson's articulation of the civil theft claim against Mr. Cullen makes no mention of Mr. Cullen engaging in "theft" of any funds attributable to such salary or commissions, and thus, the Court does not consider the civil theft claim to encompass these forms of "property" allegedly owned by Mr. Barson.

Mr. Barson moves **(# 66)** to bifurcate the trial of the breach of contract claim from trial of the equitable declaratory judgment claims asserted by both sides. He points out that the Defendants have counterclaimed seeking a declaration that they have effectively rescinded the Asset Purchase Agreement and that "the Court's ruling on Defendants' claims for rescission will define the nature of the evidence and claims tried to the jury." He explains that if the Court finds that the Defendants have rescinded the agreement, "the parties will litigate how each benefitted and what is required to put the parties back in the position they were in prior to the contract." If not, "the parties will litigate the contract and the damages thereunder."

Particularly given the lack of clarity in the operative facts and articulating the equitable claims at issue, the Court denies the motion to bifurcate without prejudice. It is unclear what claim(s) or defenses will be tried, what the evidence supports them, or what remedies are being sought. Upon completion of a detailed Pretrial Order and a Pretrial Conference, the Court may be in a better position to consider Mr. Barson's motion to bifurcate or to otherwise determine how trial in this matter shall proceed. Thus, at this time, the motion is denied without prejudice.

**D. Remaining matters**

Having addressed the motions that underlie it, the Court denies, as moot, Mr. Barson's Motion to Set Status Conference **(# 59)**.

The Court also denies, as moot, Mr. Barson's Motion for Leave to File Sur-Replies **(#72)**. The motion is more akin to a Notice of Supplemental Authority. The Court takes notice of the March 21, 2019 decision of the Colorado Court of Appeals in *Tisch v. Tisch*, but such case does not alter the analysis herein.

The Court also denies Mr. Barson's Motion for Leave to File Under Restricted Access **(# 55),** as moot. The motion refers to a summary judgment exhibit – a Schedule K-1. This is a

7

document that Mr. Barson intended to file with his summary judgment motion, but it does not appear that he did so, either publicly or under the provisional restriction provisions of D.C. Colo. L. Civ. R. 7.2(e).

## **CONCLUSION**

For the foregoing reasons, Mr. Cullen's Motion for Summary Judgment **(# 43)** is **GRANTED**. Judgment shall enter in favor of Mr. Cullen on Mr. Barson's civil theft claim at the conclusion of the remaining proceedings in this action.[3] Mr. Cullen's Motion to Dismiss **(# 35)** and Mr. Barson's Motion for Leave to File Under Restriction **(# 55)**, Motion for Status Conference **(# 59)**, and Motion for Leave to File Sur-Replies **(# 72)** are all **DENIED AS MOOT**. Mr. Barson's Motion to Bifurcate Trial **(# 66)** is **DENIED WITHOUT PREJUDICE**. Mr. Barson's Motion to Strike Amended Answer **(# 58)** is **GRANTED IN PART** and **DENIED IN PART**; the Court deems the Defendants' Amended Answer at Docket #48 to consist only of the text found at pages 40-52 of Docket #38.

Because the deadline for dispositive motions has passed and Mr. Barson's claims against CAM will proceed to trial, the parties are directed to begin preparation of a proposed Pretrial

---

[3] Neither party has addressed the propriety of entering an immediate partial judgment in favor of Mr. Cullen pursuant to Fed. R. Civ. P. 54(b). Because the quantification of Mr. Cullen's liability on any civil theft claim is somewhat tied to the determination of what rights, if any, Mr. Barson has based on his breach of contract claim, the Court finds that certification of a partial judgment under Rule 54(b) would be inappropriate.

Order consistent with the standards set forth in the Trial Preparation Order **(# 21)** and jointly contact chambers to schedule a Pretrial Conference.

Dated this 6th day of September, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge